IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DORA R. SALAS,

      Plaintiff,

v.                                                                                                  15cv215 WPL

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Dora Salas applied for disability insurance benefits and supplemental security income on August 10, 2011, based on depression, back and knee pain, and anxiety causing disability beginning on August 8, 2011. (Administrative Record "AR" 187, 194, 220.) After her application was denied at all administrative levels, she brought this proceeding for judicial review. The case is before me now on her Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum, a response filed by the Commissioner of the Social Security Administration ("SSA"), and Salas's reply. (Docs. 21, 29, 31.) For the reasons explained below, I deny Salas's motion to remand and affirm the judgment of the SSA.

### STANDARD OF REVIEW

In reviewing the Administrative Law Judge's ("ALJ") decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is a mere scintilla of evidence supporting it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show us that she has done so . . . ." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2015). If a finding of disability or nondisability is directed at any point, the ALJ will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4),  & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ then determines the physical and mental demands of the claimant's past relevant work in phase two of the fourth step and, in the third phase, compares the claimant's RFC with the functional requirements of her past relevant work to see if the claimant is still capable of performing her past work. *See Winfrey*, 92

F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing her past work, then she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to her past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## FACTUAL BACKGROUND

Salas is sixty-five years old. (AR 36.) She has a sixth grade education. (AR 42.) She previously worked as a home attendant (semi-skilled), sales clerk (semi-skilled), cleaner (unskilled), and laborer (unskilled). (AR 54, 221, 234.)

I do not address everything in the record but rather target my factual discussion to those facts necessary to the disposition of this case.

Salas testified to the following medical history prior to her alleged onset disability date of August 8, 2011: a back injury sustained while working at Presbyterian Hospital in the late 1990s (AR 38); knee injuries from a car accident in 2005 (AR 39); back and wrist injuries from a fall at a supermarket in 2011 (AR 38, 299); arthritis in her toes and feet (AR 40); and depression and anxiety (AR 41).

On October 6, 2011, Salas underwent a consultative physical evaluation with Sylvia Ramos, M.D. (AR 305-309.) Dr. Ramos noted that Salas's "gait appeared normal," "she was able to get on and off the exam table and lie flat without difficulty," "[s]he was able to squat and do

tandem, toe and heel walks well," and summarized that Salas "can sit, stand, walk, lift, carry, handle small objects, hear, speak and travel except as limited by pain." (AR 306-307.)

On October 14, 2011, Salas underwent a consultative psychological evaluation with Paula Hughson, M.D. (AR 312-318.) Dr. Hughson diagnosed Salas with generalized anxiety disorder, major depressive disorder, a learning disorder, possible borderline intelligence, and a Global Assessment of Functioning score of 48, which indicates "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 34 (4th ed., text rev. 2005). Dr. Hughson noted that Salas's "anxiety disorder and depression are presently limiting her ability to function," and found that Salas had marked limitations in both her ability to understand and remember detailed or complex instructions and ability to adapt to changes in the workplace. (AR 315-316.)

On November 9, 2011, Salas underwent a consultative imaging examination of her lumbar spine. (AR 319-322.) David Fillmore, M.D., interpreted the results and concluded that her "[v]ertebral body height and disc heights are normal. I do not see significant degenerative changes." (AR 319.)

On January 27, 2012, state agency nonexamining physician Lawrence Kuo, M.D., reviewed the evidence and assessed an RFC for medium work with some additional postural limitations. (AR 93-94.)

On February 3, 2012, state agency nonexamining psychologist Lawrence Annis, Ph.D., reviewed the evidence and concluded that Salas "presents the mental capacity to perform routine tasks within her physical ability" but noted that her "mental condition is mildly to moderately limiting." (AR 97.)

## ALJ AND APPEALS COUNCIL'S DECISIONS

The ALJ issued her decision on April 23, 2013. (AR 32.) At step one, she determined that Salas had not engaged in substantial gainful activity since August 8, 2011. (AR 27.) At step two, the ALJ found that Salas had the severe impairments of "degenerative disc disease of the cervical spine and affective disorder." (*Id.*) At step three, the ALJ concluded that Salas did not have an impairment or combination of impairments that met or medically equaled anything in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 28.) The ALJ noted that Salas had mild restriction in activities of daily living, mild difficulties in social functioning, moderate difficulties with concentration, persistence, or pace, and "no episodes of decompensation, which have been of extended duration." (*Id.*)

At phase one of step four, the ALJ determined that Salas had the RFC for medium work with one exertional limitation: "occasional[] climbing, crouching, and crawling." (AR 29.) In making this determination, the ALJ found Salas "not entirely credible" (AR 30), gave "great weight" to the opinion of Dr. Ramos and the consultative imaging results (*id.*), and gave "little weight" to Dr. Hughson's assessment. (AR 30-31.)

At phase two of step four, the ALJ heard testimony from a vocational expert and determined that Salas "is capable of performing past relevant work as a cleaner in a hospital." (AR 31.)

Salas then asked the Appeals Council to review the ALJ's decision, which it did, rendering a decision on January 20, 2015. (AR 4-7.) The Appeals Council adopted the ALJ's findings "under Steps 1, 2, [and] 3 of the sequential evaluation" and agreed that Salas "has the [RFC] to perform medium and unskilled work." (AR 4-5.)

The Appeals Council disagreed with the ALJ's assessment at phase two of step four that Salas has past relevant work as a cleaner in a hospital, however, because it found that it was not substantial gainful activity. (AR 5.) Proceeding to step five, the Appeals Council found that Salas could perform other jobs existing in significant numbers in the national economy and was not disabled. (AR 5-6.) The Appeals Council's decision is the final administrative decision of the Commissioner. (AR 1.)

## DISCUSSION

Salas alleges that the ALJ and Appeals Council committed legal error by failing to properly review medical opinions from three sources: (1) examining consultative physician Paula Hughson, M.D.; (2) examining consultative physician Sylvia Ramos, M.D.; and (3) nonexamining state agency consultant psychologist Lawrence Annis, Ph.D. (*See* Doc. 21 at 9-12.) The Commissioner responds that the ALJ and Appeals Council applied the correct legal standards, and even if they did not, any errors were harmless. (*See* Doc. 29 at 12-16.) I address each medical opinion separately and conclude that the ALJ did not commit legal error.

**I.     Paula Hughson, M.D.**

Salas argues that the ALJ and Appeals Council committed two legal errors when evaluating Dr. Hughson's opinion: (1) they "failed to apply the factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c)" (Doc. 21 at 10), and (2) "the RFC . . . is not in compliance with the evaluation guidelines in the [Commissioner's Program Operations Manual System (POMS DI 24510.063B.2)] and is in violation of [Social Security Ruling ("SSR")] 96-8p" (*id.* at 11).

As for the first alleged legal error, Dr. Hughson is an examining physician, and the ALJ must evaluate her opinion using the following six factors: (1) the examining relationship; (2) the

6

treatment relationship, including the length and nature of the relationship; (3) the supportability of the findings; (4) the consistency of the opinion "with the record as a whole"; (5) her status as a specialist; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ need not explicitly discuss each factor because "not every factor . . . will apply in every case." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quotation omitted).

Here, the ALJ did not err because she addressed factors (2), (4), and (6), which considered together justify her decision to afford the opinion minimal weight.

Addressing factor (2), the ALJ noted the length of treatment relationship was one visit, and the nature of the relationship was limited given that there were no psychological medical records for Dr. Hughson to use for comparison. (AR 31.) Admittedly, it seems contradictory that the SSA ordered a consultative examination with Dr. Hughson—which, by its nature, was a one-time visit—and then the ALJ diminished Dr. Hughson's findings by stating that a "one time examination does not allow for a comprehensive assessment." (AR 31.) Yet the C.F.R. sections require that the ALJ consider the treatment relationship and ultimately allow for the ALJ's conclusion here. Specifically, §§ 404.1527(c)(2)(i) and 416.927(c)(2)(i) require the ALJ to consider the "[l]ength of the treatment relationship and the frequency of examination." The sections go on to explain that "the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's opinion." *Id.* The ALJ further supported her decision to diminish Dr. Hughson's opinion in the three sentences that followed her statement about the insufficiency of the single visit. (*See* AR 31.) The ALJ's statement about the one time visit, then, is contemplated by the C.F.R., should be read in context, and was not a stand-alone justification for discounting Dr. Hughson's opinion.

Addressing factor (4), the ALJ noted that Dr. Hughson's assessment that Salas has marked limitations in both her ability to understand and remember detailed or complex instructions and adapt to changes in the workplace was contradicted by three things: (1) the treating physician's comment that Salas's medication worked when taken properly (*see* AR 324); (2) that Salas was not currently receiving other treatment for anxiety or depression; and (3) that Salas had no history of mental health treatment or hospitalizations (*see* AR 314). (AR 31.) These three references to the record demonstrate that the ALJ relied on specific, contradictory evidence to discount Dr. Hughson's opinion.

Finally, addressing factor (6), the ALJ noted in her credibility determination that Salas's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible" (AR 30)—a finding that Salas did not challenge (*see* Doc. 29 at 9).

As discussed above, the ALJ applied the relevant C.F.R. factors and her "decision was specific enough . . . to determine what weight [s]he gave the opinion[] and why." *Rivera v. Colvin*, 629 F. App'x 842, 844 (10th Cir. 2015) (unpublished) (citing *Oldham*, 509 F.3d at 1258).

As for the second alleged legal error—that the RFC violated a provision of the Commissioner's Program Operations Manual System (POMS DI 24510.063B.2) and SSR 96-8p—I note that court's defer to POMS "unless . . . they are arbitrary, capricious, or contrary to law," *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001) (quotation omitted), and likewise defer to SSRs "unless they are plainly erroneous or inconsistent with the Social Security Act," *Andrade v. Sec'y of Health & Hum. Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (quotation and alterations omitted). Neither party argues that deference is inappropriate here.

Salas argues that "[w]hile the ALJ listed the moderate limitations assessed by Dr. Hughson, she referred to them as 'only moderate[,'] failed to state what weight she gave those

8

limitations, and failed to state how they affected her RFC finding." (Doc. 21 at 10-11.) Salas then cites *Jaramillo v. Colvin*, 576 F. App'x 870, 875 (10th Cir. 2014) (unpublished), for the proposition that "[a]ccording to the [POMS], 'moderately limited' means 'the evidence supports the conclusion that the individual's capacity to perform the activity is impaired.'" (Doc. 21 at 11.)

Salas's argument rests on a misreading of the ALJ's decision and the relevant law. Salas appears to argue that the ALJ made the improper legal conclusion that Salas had "only moderate" limitations—which, according to Salas, violates POMS DI 24510.063B.2. (*See* Doc. 21 at 10-11.) Yet the ALJ's discussion of moderate limitations contained no conclusions and was simply an attempt to present Dr. Hughson's findings in an objective way. In fact, the paragraph discussing Dr. Hughson's findings does not contain the phrase "only moderate" (*see* AR 30-31), which leads me to believe that Salas's use of the phrase was intended as her summary of the ALJ's findings, rather than a direct quotation from the ALJ's decision. In short, the ALJ did not conclude that Salas had "only moderate" limitations; the ALJ simply conveyed Dr. Hughson's conclusions about moderate limitations before discounting them.

This clarification is important because if the ALJ properly discounted Dr. Hughson's opinion, then Dr. Hughson's findings of moderate limitation are irrelevant, and the ALJ's failure to address the moderate limitations in her RFC is not legal error. As I noted above, the ALJ adequately explained why she gave Dr. Hughson's opinion minimal weight, so the definition of "moderately limited" in POMS DI 24510.063B.2 is not applicable to the ALJ's decision, and the requirement in SSR 96-8p that the ALJ provide a narrative discussion is satisfied. (*See* SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996) ("The RFC must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g.,

laboratory findings) and nonmedical evidence (e.g., daily activities, observations)).) The RFC did not violate the definition section of POMS DI 24510.063B.2 or the narrative discussion requirement in SSR 96-8p.

## II.    Sylvia Ramos, M.D.

Salas argues that "[t]he ALJ said that she gave Dr. Ramos's opinion great weight, but failed to provide any discussion regarding the effect of these findings on her RFC assessment." (Doc. 21 at 11.) Salas cites no case for the legal standard or analogy. (*See id.*)

Salas is correct that the ALJ did not explicitly tie her findings to the RFC, but is incorrect that this omission was legal error. Salas did not allege prejudice and did not allege a discrepancy between the RFC and Dr. Ramos's opinion, which renders any error harmless because assigning greater weight to the opinion would not have helped her. *See Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014) ("[A]n ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity.") Without an inconsistency causing prejudice, Salas's argument cannot succeed because it would not have benefited her for the ALJ to provide a more robust discussion.

## III.   Lawrence Annis, Ph.D.

Salas argues that the ALJ and Appeals counsel "ignored" Dr. Annis's evaluation, "failed to even mention the disability determination explanation, and failed to explain the weight given to the opinion." (Doc. 21 at 12.) As with her argument about Dr. Ramos, however, Salas does not allege prejudice or an inconsistency between Dr. Annis's findings and the RFC. (*See* Doc. 21 at 11-12.) Salas does manage to list Dr. Annis's findings in her brief (*see id.* at 11), but fails to take the additional step to explain how Dr. Annis's limitations would have altered the RFC or the Appeals Council's step five finding. The errors that Salas allege can be distilled as Salas seeking

a more robust explanation, which is ultimately irrelevant when Salas did not allege or explain how a more robust explanation could have changed the outcome. *See Mays*, 739 F.3d at 578-79.

## CONCLUSION

The ALJ did not commit legal error when discounting Dr. Hughson's opinion. Any error related to the robustness of Dr. Ramos's opinion is harmless. And any error related to the omission of Dr. Annis's opinion is likewise harmless. I deny Salas's Motion to Reverse and Remand (Doc. 21) and affirm the decision of the Commissioner.

IT IS SO ORDERED.

*William P. Lynch*
William P. Lynch
United States Magistrate Judge